### PEOPLE ex rel. NEW YORK MUT. GASLIGHT CO. v. WELLS et al.

(Supreme Court, Special Term, New York County.    February, 1904.)

1. TAXATION—CORPORATIONS—CORRECTION OF ASSESSMENT.

Where a corporation applies to the tax commissioners to correct an assessment, presenting a sworn statement of its assets and liabilities, the tax commissioners must accept the statement as true when not contra- dicted.

2. SAME—EVIDENCE—CERTIORARI.

On certiorari to review determination of tax commissioners on applica- tion to correct an assessment the commissioners must state the evidence on which their conclusion was based, that the court may determine wheth- er it was fairly drawn from the facts established.

3. SAME—GROSS EARNINGS.

In determining the amount of an assessment against a corporation, its gross earnings as they appear from a dividend declared during the year are not a proper basis of assessment, unless it is shown that the dividend was paid from the earnings of that particular year.

4. SAME—GAS PIPES—LOCAL TAXATION.

The gas pipes and mains of a corporation laid in the streets and in- cluded under the franchise tax law in the state assessment are not taxa- ble by local authorities.

5. SAME—FRANCHISE.

The franchise of a corporation is not to be considered in assessing its taxable capital.

Certiorari by the people, on the relation of the New York Mutual Gaslight Company, against James L. Wells and others, commission- ers of taxes and assessments.    Assessment reduced.

Guthrie, Cravath & Henderson, for relator.

John J. Delany, Corp. Counsel (David Rumsey, of counsel), for respondents.

SCOTT, J.    In my opinion this proceeding cannot be distinguished from People ex rel. Consolidated Gas Co. v. Feitner, 78 App. Div. 313, 79 N. Y. Supp. 975.    In this case, as in that, the commissioners were presented with a sworn statement of the assets and liabilities of the relator, and of the value of such assets.    As to such a state- ment, the Appellate Division said: "If there was nothing to con- tradict the statement filed by the relator and the testimony of its president, then the commissioners were bound to accept such state- ment and testimony as true."    Neither in that case nor in this did the commissioners accept the statement as true, and in that case it

¶ 5. See Taxation, vol. 45, Cent. Dig. § 626.

was held that .their action was not justified by the statements contained in their return as the reasons leading to the result arrived at by them. In that case they stated that they determined the value of the gross assets "upon the earnings of the company, supported by the market rate of the share stock at $190, including the fixed charges of interest upon their bonds and the dividends of 5½ per cent. upon their stock." This was held to be insufficient, because it amounted only to a statement of the conclusions at which the commissioners arrived, without disclosing the evidence, if any, upon which they acted, and it was laid down as a rule to be observed whenever the act of the assessors is challenged that they must, in addition to setting forth the conclusion reached by them, also set forth the evidence upon which the conclusion is based, to the end that the court may determine whether the conclusion was fairly drawn from the. facts established, or whether they acted arbitrarily in the matter. The commissioners' return in the present case shows that they adopted two methods of determining the value of the relator's given assets. By the first method they took the capital at par as $3,500,000, and, "on account of the market value of the stock of the relator being $210 per share, we determined that this indicated an added value of $3,850,000," thus making the total value of the relator's estate $7,350,000. The reliance upon market value of the share stock of a corporation as evidence of the actual value of its assets has been repeatedly condemned by the courts, and has been declared by the Court of Appeals to be the "most deceptive and treacherous test," to be resorted to only in those rare cases, in which a better means or truer test of valuation is not obtainable. People ex rel. Union Trust Co. v. Coleman, 126 N. Y. 433, 27 N. E. 818, 12 L. R. A. 762. Furthermore, the commissioners do not return how they ascertained the market value of the share stock, and in this aspect the present case presents one of the same features commented upon in the Consolidated Gas Company Case. The second method of ascertaining the value of the total assets is thus stated by the commissioners:

"We ascertained that the company had earned during the year preceding the second Monday of January, 1902, nine per cent. upon its capital stock, being the sum of $315,000, and we were informed and believe that the said company was capable of earning the said sum annually. From our general knowledge of the value of properties of this kind, and of the sums for which such properties, under ordinary circumstances, would sell, we believe that the entire plant or estate of said corporation would, under ordinary circumstances, sell for a sum which would produce four per cent. per annum upon the investment, and therefore, by capitalizing the actual earnings of said company at four per cent., it appeared that the fair market value of the entire estate of this corporation, including franchises, was $7,875,000."

This statement differs only in elaboration from the statement in the return of the Consolidated Gas Company Case that the commissioners had determined the value of the gross assets "upon the earnings of the company." The same difficulty presents itself in this case as was pointed out in that, to wit, that the commissioners did not show how they ascertained the amount of the gross earnings, unless from the company's statement as to the amount of dividend paid dur-

ing the year; and it may be taken as well settled that the mere declaration and payment of a given sum by way of dividend does not, by itself, raise a presumption that the corporation had earned, in the year for which the dividend was so declared and paid, the amount of the dividend, for, as suggested in the Consolidated Gas Company Case, the dividend may have been paid from a surplus accumulated in prior years, and there may not have been any dividend at all earned in the particular year for which it is paid. The commissioners' statement that they were "informed and believe" that the company was capable of earning the amount of the dividend every year goes for nothing, in the absence of any disclosure of the sources and nature of their information. For the reasons above stated, and following the decision of the Appellate Division of this department in the case above cited, which finds support in the many cases referred to in its opinion, I am constrained to hold that the commissioners' assessment was erroneous. Upon the trial the relator moved upon the petition and return for relief. The defendants, upon the same papers, moved for the dismissal of the writ. Neither side moved for the taking of testimony or the appointment of a referee, and no suggestion was made by either side that a reference back to the commissioners would result in the presentation of any further facts than those presented by the papers. It becomes the duty of the court, therefore, to determine, upon these papers, the amount by which the assessment should be reduced. The relator's statement filed with the tax commissioners showed that the value of its total gross assets was $4,511,666, which was made up of real estate of the value of $2,721,750, and "personal property" of the value of $1,789,916. It appeared, however, from a supplementary statement, also filed with the commissioners, that the value of the real estate as given in the first statement included mains and pipes in the streets valued at $768,290, which had been included in the state assessment under the franchise tax law (Laws 1896, p. 795, c. 908), and was therefore not taxable by the local authorities. This would leave the total value of the assets liable to assessment, excluding the franchise and property included in the assessment of the franchise, $3,743,376. It is conceded on all hands that this amount is subject to the deduction of $3,125,011.27 for the assessed value of its real estate, debts, investment in city bonds, and 10 per cent. of the capital stock. This leaves the sum of $618,364.73 as the amount at which the relator's assessment should have been fixed. The assessment must therefore be reduced to that sum.

Ordered accordingly.